# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ALASKA

JOHN MADSEN, *et al.*,

          Plaintiffs,

      v.

HEATHER D'ANDREA FISH, *et al.*,

          Defendants.

Case No. 3:25-cv-00091-SLG

---

HEATHER D'ANDREA FISH, *et al.*,

          Counter-Claimants,

      v.

JOHN MADSEN,

          Counter-Defendant.

## <u>ORDER ON THREE PENDING MOTIONS</u>

This order addresses three motions currently pending before the Court:

1.    At Docket 33 is Defendants/Counter-Claimants Heather D' Andrea Fish and David Fish's (the "Fishes") First Motion for Partial Summary Judgment.[1] Plaintiff/Counter-Defendant John Madsen responded in opposition at Docket 44,[2] to which the Fishes replied at Docket 34.

---

[1] At Docket 34 is the Fishes' accompanying Memorandum in Support of Motion for Partial Summary Judgment and at Docket 35 is the Fishes' accompanying Declaration of Heather D'Andrea Fish.

[2] At Docket 45 is Mr. Madsen's accompanying "Memorandum of Points and Authorities in Support of Opposition."

2. At Docket 43 is Plaintiff John Madsen's Motion to Dismiss Counterclaims. The Fishes responded in opposition at Docket 55, to which Plaintiff Madsen replied at Docket 57.

3. At Docket 65 is Plaintiffs John Madsen and Stephan Lake Holding, LLC's Motion to Amend Caption. No opposition was filed.

Oral argument was not requested on any of these motions and was not necessary to the Court's determinations. The Court first addresses Plaintiffs' Motion to Amend at Docket 65, then Plaintiff John Madsen's Motion to Dismiss at Docket 43, and then the Fishes' Motion for Partial Summary Judgment at Docket 33.

## FACTUAL BACKGROUND

This dispute arises out of a purchase of Stephan Lake Lodge (the "Lodge"), a hunting and fishing lodge located at Stephan Lake, near Talkeetna, Alaska. In July 2022, the Fishes met with Mr. Madsen at the Lodge to discuss and negotiate the sale of the Lodge and its associated guide service from Mr. Madsen to the Fishes.[3]

During the negotiation process prior to the purchase, Mr. Madsen made several promises, representations, and assurances to the Fishes, many of which are not disputed.[4] Mr. Madsen's undisputed representations include: the ability for

---

[3] Docket 18-1 at 2.

[4] *See generally* Docket 45 at 6-11.

the Fishes to "easily realize $100,000 per month in profits"; "how much more the Lodge could make with minimal additional effort"; "the fact that there would be plenty of existing bookings at the time of [the Fishes] take-over to sustain revenue flow"; "the fact that guides, pilots, packers, and Lodge personnel such as manager, housekeeper, chef and grounds guy, would be staying on"; "a promise that [the Fishes would] have enough propane and fuel to operate for the first year"; "the fact that the Lodge had exclusive leasing rights to the Native Land Lease lands and the 3/4-mile runway near the Lodge, which would mean Madsen would not be using them"; and "the fact that Mr. Madsen would not be competing with [the Fishes]."[5]

The Fishes, Ivan Chikigak Steadman, and William Espiricueta, (collectively the "Buyers" or "Defendants"), and Mr. Madsen, individually and in his capacity as the sole member and manager of Stephan Lake Adventures, LLC ("SLA") and Stephan Lake Holdings, LLC, ("SLH") entered into an Agreement for Purchase, Sale and Assignment of Membership Interests (the "Agreement"), effective July 29, 2022.[6] The Agreement provided that the Buyers would acquire 90% of Mr. Madsen's membership interest in SLH and 100% of Mr. Madsen's membership interest in SLA, for a total purchase price of $2.25 million.[7] The purchase price was

---

[5] Docket 45 at 6; Docket 35 at 2; *see also* Docket 45 at 6-8.

[6] *See* Docket 1-2 at 1-12. The sale included real and personal property, as well as Lodge equipment and inventory that was owned by SLH and deposits for hunts scheduled for 2022 and 2023. Docket 1-2 at 23-25, 56-59.

[7] Docket 1-2 at 1-11.

Case No. 3:25-cv-00091-SLG, *John Madsen, et al. v. Heather D'Andrea Fish, et al.*
Order on Three Pending Motions
Page 3 of 37

Case 3:25-cv-00091-SLG      Document 68      Filed 01/14/26      Page 3 of 37

to be paid over time in periodic balloon payments and pursuant to two promissory notes.[8]

The transaction included a variety of tangible and intangible assets. SLH's property included the Lodge property, two cabins, vehicles, machinery, fuel, generators, maintenance equipment, vessels, and other miscellaneous tools and equipment.[9] SLA is in the business of providing hunting and fishing excursions and outfitting services.[10] As part of the Agreement, the Buyers were "entitled to collect and retain the first $150,000.00 of revenues from all post-closing new SLA hunting bookings" and would "not be obligated to pay over to Sellers any portion of the $150,000.00 that may be received by SLA."[11] The Agreement also stated that SLA had booked hunts that were "scheduled to be serviced by SLA in 2022 and 2023, and that those hunters have paid deposits for the 2022 and 2023 hunts."[12] As to these existing SLA hunting bookings, under the Agreement, the Buyers were to "service and honor the 2022 and 2023 booked hunts."[13]

The import of one particular clause of the Agreement is in dispute in this

---

[8] Docket 1-2 at 2-3.

[9] Docket 1-2 at 23-25.

[10] Docket 1-2 at 1-2.

[11] Docket 1-2 at 2.

[12] Docket 1-2 at 6; *see also* Docket 1-2 at 56-58 (2022 hunting schedule); Docket 1-2 at 59 (2023 hunting schedule).

[13] Docket 1-2 at 6.

Case No. 3:25-cv-00091-SLG, *John Madsen, et al. v. Heather D'Andrea Fish, et al.*
Order on Three Pending Motions
Page 4 of 37

Case 3:25-cv-00091-SLG     Document 68     Filed 01/14/26     Page 4 of 37

case. Section VI.d of the Agreement, is titled "Entire Agreement and Counterparts" ("non-reliance clause"), and provides in relevant part:

> The Agreement and Schedules attached hereto evidence the entire agreement between Sellers and Buyers relating to the purchase and sale of the Membership Interests and supersede in all respects any and all prior oral or written agreements or understandings. Buyers warrant and represent that they have had a full and fair opportunity to undertake all due diligence as they deem necessary in order to enter into this Agreement, and further warrant and represent that they have not relied on any representations or oral statements made by Sellers or anyone on Sellers' behalf in entering into this Agreement.[14]

The Agreement was subsequently amended three times. On August 4, 2022, the parties amended the Agreement with respect to the allocation of local, state and federal taxes, and the allocation of fees and costs associated with the Native Land Lease.[15] Then, on October 5, 2022, the parties executed a Second Amendment.[16] The Second Amendment made the following changes: (1) "the parties agreed that the 'Carla Cabin' parcel, which comprises five acres and the D-LOG structure thereon but excludes the Carla Cabin, would be included as an asset of SLH to be sold pursuant to the Agreement as amended"; and (2) the transaction included the sale of 100% of SLH membership interests to the Buyers,

---

[14] Docket 1-2 at 9-10.

[15] Docket 1-4 at 1-3.

[16] Docket 1-5 at 1-5.

Case No. 3:25-cv-00091-SLG, *John Madsen, et al. v. Heather D'Andrea Fish, et al.*
Order on Three Pending Motions
Page 5 of 37

Case 3:25-cv-00091-SLG    Document 68    Filed 01/14/26    Page 5 of 37

instead of the previous 90% SLH interest in the original Agreement.[17] "The inclusion of the Carla Cabin [parcel] resulted in an upward adjustment of the sales price by $350,000.00" to a total purchase price of $2,600,000.[18] Then, on March 30, 2023, the parties entered into a Third Amendment.[19] "The Third Amendment included the Carla Cabin and increased the purchase price by $107,000."[20]

On August 1, 2022, the Fishes took possession of the Lodge, which is when their operational problems began.[21] According to Ms. Fish, the expected $100,000 per month revenue stream was not reality; funds for pre-existing hunting and fishing bookings were not provided; almost all the staff had left the Lodge by August 1, 2022; the Lodge lacked sufficient fuel and propane; and the Lodge did not have exclusive leasing rights to the Native lands and the runway near the Lodge.[22]

On July 1, 2024, the Fishes closed down operations at the Lodge.[23] According to Mr. Madsen, during the summer of 2024, the Fishes "abandoned the

---

[17] Docket 1 at 4, ¶ 24; Docket 1-5 at 1-5.

[18] Docket 1 at 4, ¶ 25.

[19] Docket 1 at 4, ¶ 26; Docket 1-6 at 1-4.

[20] Docket 1 at 4, ¶ 27.

[21] Docket 18-1 at 3.

[22] Docket 35 at 2-3.

[23] Docket 35 at 4.

Case No. 3:25-cv-00091-SLG, *John Madsen, et al. v. Heather D'Andrea Fish, et al.*
Order on Three Pending Motions
Page 6 of 37

Case 3:25-cv-00091-SLG     Document 68     Filed 01/14/26     Page 6 of 37

Lodge [a]nd ceased operations under SLA";[24] left "the Lodge with[out] any sort of fuel including diesel, gasoline or propane";[25] and left "almost all of the equipment used to support the [L]odge either damaged or destroyed."[26]

On July 30, 2024, Mr. Madsen served a notice of default on the Fishes.[27] The notice informed the Buyers that they were in default under the Agreement and promissory notes and had abandoned the property, and that if the defaults were not promptly cured, the Buyers' interests in SLH would revert back to Mr. Madsen, in addition to their liability for damages and the acceleration of the three promissory notes.[28]

## PROCEDURAL BACKGROUND

On December 19, 2024, Plaintiffs filed a Complaint against Defendants alleging that Defendants had defaulted on their obligations under the Agreement as amended:[29] Count I seeks specific performance by Defendants "of all monetary and non-monetary obligations under the Agreement as amended"; Count II seeks specific performance requiring Defendants "to convey to Madsen any and all pro-

---

[24] Docket 1 at 6, ¶ 36.

[25] Docket 1 at 6, ¶ 36.

[26] Docket 1-7 at 2. During the summer of 2024, Mr. Madsen flew to the Lodge and confirmed that the Fishes had abandoned the property. Docket 1-7 at 2.

[27] Docket 1-7.

[28] Docket 1-7 at 1-3.

[29] Docket 1 at 5-6, ¶¶ 32-39.

Case No. 3:25-cv-00091-SLG, *John Madsen, et al. v. Heather D'Andrea Fish, et al.*
Order on Three Pending Motions
Page 7 of 37

Case 3:25-cv-00091-SLG     Document 68     Filed 01/14/26     Page 7 of 37

rata membership interests they have in SLH up to and through their default and failure to cure alleged herein"; Count III seeks damages for breach of contract of the promissory notes; and Count IV alleges conversion of the hunting deposits.[30] For relief, Plaintiffs seek an order "[c]ompelling Defendants to reassume control of the Lodge, and pay to John E. Madsen all past due and future payments due under the Agreement and Promissory Notes"; "abide by all monetary and non-monetary obligations under the Agreement as amended"; the entry of judgment against Defendants, jointly and severally, in the sum of at least $1,929,325.35; and interest and attorneys' fees.[31]

On April 28, 2025, the Fishes filed an Amended Answer.[32] The Amended Answer also brings five counterclaims against Mr. Madsen only for the alleged misrepresentations that he made during the sale of the Lodge.[33] Counterclaim I alleges fraud, fraudulent non-disclosure, and misrepresentation (both negligent and intentional); Counterclaim II alleges a breach of contract under the UCC and a breach of the covenant of good faith and fair dealing; Counterclaim III seeks to rescind the Agreement and refund to the Fishes all sums they have paid;

---

[30] Docket 1 at 6-8, ¶¶ 40-62.

[31] Docket 1 at 8-9. The Court calculated the total of $1,929,325.35 by summing the remaining balances alleged due under Promissory Notes #1, #2, and #3 of the Agreement, and $150,000 for the amount of hunting deposits "wrongfully retained by Defendants." Docket 1 at 8-9.

[32] Docket 27.

[33] Docket 27 at 12-20, ¶¶ 1-31.

Case No. 3:25-cv-00091-SLG, *John Madsen, et al. v. Heather D'Andrea Fish, et al.*
Order on Three Pending Motions
Page 8 of 37

Case 3:25-cv-00091-SLG    Document 68    Filed 01/14/26    Page 8 of 37

Counterclaim IV alleges a violation of Alaska's Unfair Trade Practices Act ("UTPCPA"); and Counterclaim V seeks punitive damages.[34]

On June 25, 2025, the Fishes filed their motion for partial summary judgment seeking "an avoidance (disaffirmance) and rescission" of the Agreement as amended and the promissory notes and "a refund of the sums paid by the Fishes in pursuance of the now avoided transaction, i.e., minimally, the sum of $430,287.87."[35]

On July 16, 2025, Mr. Madsen filed a motion to dismiss all five of the Fishes' counterclaims pursuant to Federal Rule of Civil Procedure 12(b)(6).[36]

On December 5, 2025, Plaintiffs filed a motion to amend the case caption to remove Defendants Espiricueta and Steadman.[37]

## JURISDICTION AND VENUE

Plaintiffs originally filed their Complaint in the Eastern District of Virginia.[38] The matter was then transferred to the District of Alaska pursuant to 28 U.S.C. § 1404(a).[39] This Court has diversity jurisdiction over this case pursuant to 28 U.S.C.

---

[34] Docket 27 at 12-20, ¶¶ 1-31.

[35] Docket 33 at 1.

[36] Docket 43.

[37] Docket 65. Also filed on that date is Mr. Madsen's Motion to Amend/Correct Responses to Requests for Admission at Docket 64, which this Court will address by separate order.

[38] Docket 1 at 1.

[39] Docket 29 at 3.

Case No. 3:25-cv-00091-SLG, *John Madsen, et al. v. Heather D'Andrea Fish, et al.*
Order on Three Pending Motions
Page 9 of 37

Case 3:25-cv-00091-SLG    Document 68    Filed 01/14/26    Page 9 of 37

§ 1332. Because this is a diversity action, state substantive law applies to interpretation of the Agreement and federal law applies to procedural issues.[40] The parties' Agreement provides that it "shall in all respects be governed by, and enforced and interpreted in accordance with the laws of the State of Alaska."[41]

**LEGAL STANDARDS**

I. **Motion to Dismiss Counterclaims**

A. **Rule 12(b)(6)**

A party may seek dismissal under Federal Rule of Civil Procedure 12(b)(6) if a pleading "fail[s] to state a claim for which relief can be granted." "To survive a motion to dismiss [under Rule 12(b)(6)], a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"[42] A claim is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[43] A court must accept all well-pled allegations in a pleading as true and construe them in the light most favorable to the non-moving party.[44] Nonetheless, "the trial court does not have to accept as true conclusory allegations

---

[40] *See Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938).

[41] Docket 1-2 at 8.

[42] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

[43] *Id.* (citation omitted).

[44] *See Daniels-Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 998 (9th Cir. 2010).

Case No. 3:25-cv-00091-SLG, *John Madsen, et al. v. Heather D'Andrea Fish, et al.*
Order on Three Pending Motions
Page 10 of 37

Case 3:25-cv-00091-SLG    Document 68    Filed 01/14/26    Page 10 of 37

in a complaint or legal claims asserted in the form of factual allegations."[45]

When a motion to dismiss for failure to state a claim is granted, a court "should freely give leave when justice so requires."[46] However, "leave may be denied if amendment of the complaint would be futile."[47] Futility exists when "the allegation of other facts consistent with the challenged pleading could not possibly cure the deficiency."[48]

### B. Rule 9(b)

Rule 9(b) requires that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake."[49] But the rule also provides that "[m]alice, intent, knowledge, and other conditions of a person's mind may be alleged generally."[50]

"Rule 9(b) ensures that allegations of fraud are specific enough to give defendants notice of the particular misconduct which is alleged to constitute the fraud charged so that they can defend against the charge and not just deny that

---

[45] *In re Tracht Gut, LLC*, 836 F.3d 1146, 1150 (9th Cir. 2016).

[46] Fed. R. Civ. P. 15(a)(2).

[47] *Gordon v. City of Oakland*, 627 F.3d 1092, 1094 (9th Cir. 2010) (citing *Albrecht v. Lund*, 845 F.2d 193, 195 (9th Cir. 1988)).

[48] *Schreiber Distributing Co. v. Serv-Well Furniture Co.*, 806 F.2d 1393, 1401 (9th Cir. 1986) (citation omitted).

[49] Fed. R. Civ. P. 9(b).

[50] *Id.*

Case No. 3:25-cv-00091-SLG, *John Madsen, et al. v. Heather D'Andrea Fish, et al.*
Order on Three Pending Motions
Page 11 of 37

Case 3:25-cv-00091-SLG     Document 68     Filed 01/14/26     Page 11 of 37

they have done anything wrong."[51] "To meet this standard, [a plaintiff's] complaint must 'identify the who, what, when, where, and how of the misconduct charged, as well as what is false or misleading about the purportedly fraudulent statement, and why it is false.'"[52] Allegations of fraud based on information and belief may suffice as to matters peculiarly within the opposing party's knowledge, so long as the allegations are accompanied by a statement of the facts upon which the belief is founded.[53]

## II. Motion for Partial Summary Judgment

Federal Rule of Civil Procedure 56(a) directs a court to "grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." The burden of showing the absence of a genuine dispute of material fact lies with the movant.[54] If the movant meets this burden, the non-moving party must demonstrate "specific facts showing that there is a genuine issue for trial."[55] The non-moving party may not rely on "mere allegations or denials"; rather, to reach the level of a genuine dispute, the evidence must be such "that a reasonable jury could return a verdict

---

[51] *Semegen v. Weidner*, 780 F.2d 727, 731 (9th Cir. 1985).

[52] *Salameh v. Tarsadia Hotel*, 726 F.3d 1124, 1133 (9th Cir. 2013) (quoting *Cafasso v. Gen. Dynamics C4 Sys., Inc.*, 637 F.3d 1047, 1055 (9th Cir. 2011)).

[53] *See Wood v. Tandem Comput. Inc.*, 818 F.2d 1433, 1439 (9th Cir. 1987).

[54] *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986).

[55] *Id.* at 324 (quoting Fed. R. Civ. P. 56(e)); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986).

Case No. 3:25-cv-00091-SLG, *John Madsen, et al. v. Heather D'Andrea Fish, et al.*
Order on Three Pending Motions
Page 12 of 37

Case 3:25-cv-00091-SLG     Document 68     Filed 01/14/26     Page 12 of 37

for the non-moving party."[56] When considering a motion for summary judgment, a court views the facts in the light most favorable to the non-moving party and draws "all justifiable inferences" in the non-moving party's favor.[57]

## DISCUSSION

### I. Motion to Amend Caption

In Plaintiffs' Motion to Amend Caption, Plaintiffs state "that they have settled all claims against Defendants William Espiricueta and Ivan Chikigak Steadman."[58] Accordingly, Plaintiffs seek to (1) amend their complaint to withdraw all claims against Mr. Espiricueta and Mr. Steadman; and (2) remove Mr. Espiricueta and Mr. Steadman from the case caption.[59]

Although Plaintiffs cite to Rule 15(a)(1)(B), Plaintiffs are effectively seeking the dismissal of these two Defendants pursuant to Federal Rule of Civil Procedure 41(a)(1)(A)(i).[60] The Fishes, the remaining Defendants in this action, have not opposed. Therefore, Defendants William Espiricueta and Ivan Chikigak Steadman

---

[56] *Anderson*, 477 U.S. at 248-49 (quoting *First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253 (1968)).

[57] *Id.* at 255 (citing *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158-59 (1970)).

[58] Docket 65 at 2.

[59] Docket 65 at 2.

[60] Fed. R. Civ. P. 41(a)(1)(A)(i) ("[a] plaintiff may dismiss an action without a court order by filing a notice of dismissal before the opposing party serves either an answer or a motion for summary judgment"); *see also Hamilton v. Shearson-Lehman Amer. Exp., Inc.*, 813 F.2d 1532, 1535 (9th Cir. 1987) ("Courts have consistently upheld notice dismissals following a wide variety of other substantive motions filed by defendants before answering.").

Case No. 3:25-cv-00091-SLG, *John Madsen, et al. v. Heather D'Andrea Fish, et al.*
Order on Three Pending Motions
Page 13 of 37

Case 3:25-cv-00091-SLG    Document 68    Filed 01/14/26    Page 13 of 37

are DISMISSED from this case. The Clerk of Court is directed to amend the case caption to only include Heather D'Andrea Fish and David Fish as Defendants.

For the foregoing reasons, Plaintiffs' motion at Docket 65 is GRANTED.

## II. John Madsen's Motion to Dismiss Counterclaims

Mr. Madsen moves to dismiss all five counterclaims brought by the Fishes.[61]

### A. Counterclaim I (Fraud, Fraudulent Non-Disclosure, and Misrepresentation)

Mr. Madsen asserts that Counterclaim I (and Counterclaims II and III) should be dismissed because the non-reliance clause in the Agreement "makes clear that all of the representations that form the basis of the Agreement are contained therein, and that any other representations are extinguished."[62] Mr. Madsen also asserts that Counterclaim I fails to state a claim for fraud because (1) the Fishes failed to plead the allegations of fraud with particularity; (2) Mr. Madsen had no duty to disclose the alleged omissions; and (3) the fraud claim is barred by the economic loss rule.[63]

In their opposition, the Fishes assert that (1) Counterclaims I, II, and III are not barred by the non-reliance clause of the Agreement because such clauses are invalid and unenforceable as a matter of public policy;[64] (2) the fraud claim is pled

---

[61] Docket 43.

[62] Docket 43 at 3.

[63] Docket 43 at 5-9.

[64] Docket 55 at 4-6.

Case No. 3:25-cv-00091-SLG, *John Madsen, et al. v. Heather D'Andrea Fish, et al.*
Order on Three Pending Motions
Page 14 of 37

Case 3:25-cv-00091-SLG     Document 68     Filed 01/14/26     Page 14 of 37

with sufficient particularity and Mr. Madsen's misrepresentations were not mere opinion or puffery;[65] (3) sellers, such as Mr. Madsen, have "an affirmative duty to disclose the full truth when their partial truths are misleading, or where they know the buyer is operating under a mistake";[66] and (4) the economic loss rule does not apply to fraud and misrepresentation claims.[67]

In his reply, Mr. Madsen asserts that (1) the non-reliance clause in the Agreement is enforceable;[68] (2) the Fishes "positively represented they had conducted sufficient due diligence";[69] (3) certain alleged misrepresentations or omissions were waived when the parties entered into the third amendment in March 2023;[70] (4) Mr. Madsen's alleged "misrepresentations" are not actionable because they "are non-specific or future predictions dependent on the skills and

---

[65] Docket 55 at 6-9.

[66] Docket 55 at 10-11.

[67] Docket 55 at 12-14. The Fishes makes similar arguments in their reply to Mr. Madsen's opposition to the motion for partial summary judgment. *See generally* Docket 53 at 4-7. *See also* Docket 53-1 at 1 (citing state court and federal diversity cases from 18 different state and federal courts as examples of courts "Refusing to Enforce 'Anti-Reliance' or 'Non-Reliance' Clauses As a Way of Precluding Fraud or Misrepresentation Claims").

[68] Docket 57 at 3-4.

[69] Docket 57 at 7 ("They could (and may have) spoken with the staff as to continued employment; they could (and may have) read the lease; they could (and may have) reviewed the pending reservations; they could (and may have) reviewed the financial documents.").

[70] Docket 57 at 8. The waiver issue is raised for the first time in Mr. Madsen's reply, where he states that "[t]he third amendment in March of 2023 serves as a waiver of any prior misunderstandings." Docket 57 at 8. But the Court will not consider an argument raised for the first time in a reply. *See, e.g.*, *Walsh v. Nev. Dep't of Human Res.*, 471 F.3d 1033, 1037 (9th Cir. 2006).

Case No. 3:25-cv-00091-SLG, *John Madsen, et al. v. Heather D'Andrea Fish, et al.*
Order on Three Pending Motions
Page 15 of 37

Case 3:25-cv-00091-SLG     Document 68     Filed 01/14/26     Page 15 of 37

actions of the purchaser";[71] and (5) fraud was not plead with the requisite particularity because the Fishes do not allege any documentary fraud, only verbal assertions.[72]

### 1. Non-Reliance Clause

Mr. Madsen contends that the non-reliance clause of the Agreement forecloses the Fishes' Counterclaims I through III based on Mr. Madsen's alleged misrepresentations prior to the parties entering into the Agreement.[73] However, under Alaska law, the parol evidence rule is not an absolute bar so as to warrant the dismissal of these claims at the pleadings stage.

Under Alaska law, a court is to interpret a contract to "give effect to the reasonable expectations of the parties."[74] "When a written statement sets out the terms of an agreement between contracting parties, the parol evidence rule generally precludes the parties from using evidence of prior agreements to contradict the written terms."[75] In *Inman v. Clyde Hall Drilling Company*, the Alaska Supreme Court upheld a provision in an employment contract that required the employee to give 30 days' written notice of any claim arising out of his employment

---

[71] Docket 57 at 9-10.

[72] Docket 57 at 11.

[73] Docket 43 at 3-5; *see also* Docket 1-2 at 9-10.

[74] *Mitford v. de Lasala*, 666 P.2d 1000, 1005 (Alaska 1983).

[75] *Froines v. Valdez Fisheries Dev. Ass'n, Inc.*, 75 P.3d 83, 86 (Alaska 2003).

Case 3:25-cv-00091-SLG     Document 68     Filed 01/14/26     Page 16 of 37

before instituting a lawsuit.[76] The employee argued that the provision was void as against public policy, but the Supreme Court concluded that "the contractual provision in question is [not] unfair or unreasonable."[77] And yet in its opinion, the Court stated:

> In determining whether certain contractual provisions should be enforced, the court must look realistically at the relative bargaining positions of the parties in the framework of contemporary business practices and commercial life. If we find those positions are such that one party has unscrupulously taken advantage of the economic necessities of the other, then in the interest of justice—as a matter of public policy—we would refuse to enforce the transaction. But the grounds for judicial interference must be clear. **Whether the court should refuse to recognize and uphold that which the parties have agreed upon is a question of fact upon which evidence is required**.[78]

The Alaska Supreme Court explained that although "[a]s a matter of judicial policy the court should maintain and enforce contracts, rather than enable parties to escape from the obligations they have chosen to incur[,]" the "'freedom of contract' is a qualified and not an absolute right, and cannot be applied on a strict, doctrinal basis."[79]

In their reply to Plaintiffs' opposition to the partial summary judgment motion, the Fishes cite to several Alaska cases that the Fishes maintain support their view

---

[76] 369 P.2d 498, 502 (Alaska 1962).

[77] *Id.* at 500.

[78] *Id.* (emphasis added) (citations omitted).

[79] *Id.* (citations omitted).

Case No. 3:25-cv-00091-SLG, *John Madsen, et al. v. Heather D'Andrea Fish, et al.*
Order on Three Pending Motions
Page 17 of 37

Case 3:25-cv-00091-SLG     Document 68     Filed 01/14/26     Page 17 of 37

that the non-reliance clause is unenforceable.[80] First, they cite to *Cousineau v. Walker*.[81] There, the Supreme Court reversed the trial court's denial of a purchaser's request to rescind a sale based on fraudulent misrepresentations.[82] In so doing, the Supreme Court quoted with approval the Florida Court of Appeals, which had held that "[a] person guilty of fraudulent misrepresentation should not be permitted to hide behind the doctrine of *caveat emptor*."[83] Although *Cousineau* did not appear to involve a non-reliance clause, it is instructive in that it adopts the view of many other courts that recognizes "the doctrine that negligence in trusting in a misrepresentation will not excuse positive willful fraud or deprive the defrauded person of his remedy."[84]

The Fishes also cite to *Industrial Commercial Electric, Inc. v. McLees*.[85] There, the Alaska Supreme Court reversed the trial court's grant of summary judgment to a former employee against his employer.[86] The trial court had held that the employer's claim against the former employee was barred by the mutual

---

[80] Docket 53 at 4-5.

[81] Docket 53 at 4-5 (citing *Cousineau v. Walker*, 613 P.2d 608 (Alaska 1980)).

[82] *Cousineau*, 613 P.2d at 614-16.

[83] *Id.* at 614 (citing *Upledger v. Vilanor, Inc.*, 369 So. 2d 427, 430 (Fla. Dist. Ct. App. 1979)).

[84] *Id.* (quoting W. Jaeger, Williston on Contracts § 1515B at 487 (3d ed. 1970)).

[85] Docket 53 at 5 (citing *Indus. Com. Elec., Inc. v. McLees*, 101 P.3d 593 (Alaska 2004)).

[86]*Id.* at 601.

Case No. 3:25-cv-00091-SLG, *John Madsen, et al. v. Heather D'Andrea Fish, et al.*
Order on Three Pending Motions
Page 18 of 37

Case 3:25-cv-00091-SLG    Document 68    Filed 01/14/26    Page 18 of 37

releases the parties had signed before filing suit.[87] In reversing, the Supreme Court held the validity of the releases raised genuine issues of material fact whether the employer had been induced to enter into the releases "by fraud, misrepresentation, or duress," notwithstanding the integration clause in the releases.[88] Rather, the Supreme Court held "that settlement agreements and releases, like any other contracts, are susceptible to attack for mistake, fraud, misrepresentation, and duress."[89]

The Fishes also cite extensively to other courts that have declined to enforce non-reliance clauses so as to categorically preclude fraud or misrepresentation claims.[90]

Mr. Madsen asserts this case is "parallel" to *Ameriprise Financial, Inc. v. Vallandingham*.[91] There, the West Virginia Court of Appeals upheld a consent and release agreement in which the franchisee released his claims against the franchisor in connection with the franchisee's purchase of another Ameriprise

---

[87] *Id.* at 594.

[88] *Id.* at 598.

[89] *Id.* at 597 (first citing *Old Harbor Native Corp. v. Afognak Joint Venture*, 30 P.3d 104, 105 (Alaska 2001); and then citing *Zeilinger v. SOHIO Alaska Petroleum Co.*, 823 P.2d 653, 657-58 (Alaska 1992)).

[90] *See* Docket 53-1 at 1-8; *see also* Docket 53-1 at 8-9 ("Treatise- and Non-Case Authority").

[91] Docket 57 at 3-4 (citing *Ameriprise Fin., Inc. v. Vallandingham*, 918 S.E.2d 572 (W. Va. Ct. App. 2025); s*ee also* Docket 57-1.

Case No. 3:25-cv-00091-SLG, *John Madsen, et al. v. Heather D'Andrea Fish, et al.*
Order on Three Pending Motions
Page 19 of 37

Case 3:25-cv-00091-SLG    Document 68    Filed 01/14/26    Page 19 of 37

advisor's franchise.[92] But given that the case involved a claim against a third party, the West Virginia Court of Appeals in *Vallandingham* expressly did not "decide whether a non-reliance clause in a contract would be enforceable as a waiver of a fraudulent inducement claim by one party to that contract against another."[93] Indeed, in response to the dissenting judge's conclusion that if "a non-reliance clause mirroring the Due Diligence clause had been included in a [hypothetical] sale contract between [the franchisee and Ameriprise], it . . . would have been unenforceable against a fraudulent inducement claim[,]" the majority opinion states that "[p]erhaps the dissent is correct; because it interprets a contract not before the Court and answers an academic question, to say whether it is right or wrong would be to issue an advisory opinion, which this Court is without authority to do."[94]

Mr. Madsen's reply also asserts, without explanation, that "[t]he disclaimers in this case are substantively identical to the disclaimer of warranties upheld by the Alaska Supreme [C]ourt in *Hayes v. Bering Sea Reindeer Products*, 983 P.2d 1280, 1284-85 (Alaska 1999)."[95] But that case is likewise inapposite; it affirmed a trial court's decision after a bench trial that any warranties made by the seller of an aircraft were disclaimed not only by the disclaimer in the sales contract, but by the

---

[92] *Vallandingham*, 918 S.E.2d at 585.

[93] *Id.* at 582 n.9; Docket 57-1 at 20 n.9.

[94] *Vallandingham*, 918 S.E.2d at 582 n.9; Docket 57-1 at 20 n.9.

[95] Docket 57 at 3.

Case No. 3:25-cv-00091-SLG, *John Madsen, et al. v. Heather D'Andrea Fish, et al.*
Order on Three Pending Motions
Page 20 of 37

Case 3:25-cv-00091-SLG      Document 68      Filed 01/14/26      Page 20 of 37

buyer's own thorough inspection of the aircraft.[96] Thus, "[t]he numerous discrepancies the [buyer's inspector's] mechanic observed and the clear language of the disclaimer would not have left [the buyer] with any illusions that [the seller] was warranting the aircraft's condition."[97]

The Court acknowledges that the non-reliance clause in the Agreement in this case contains express language stating that the Fishes have not relied on any alleged misrepresentations made by Mr. Madsen. But for the same reason that the Alaska Supreme Court, consistent with other courts throughout the country, has declined to categorically enforce such a clause, the Court finds that the non-reliance clause does not preclude the Fishes from asserting Counterclaims based on allegations of fraud, fraudulent non-disclosure, and misrepresentation.

### 2. Rule 9(b)

To adequately plead fraud or misrepresentation, the Fishes must satisfy the heightened Rule 9(b) pleading standard in which a party must "state with particularity the circumstances constituting fraud."[98] Mr. Madsen contends that the Fishes' Counterclaims merely allege general statements that he allegedly made concerning the Lodge and maintains that "[t]here is no allegation about who Madsen allegedly made the misrepresentation to, nor are the exact words

---

[96] *Hayes v. Bering Sea Reindeer Prods.*, 983 P.2d 1280, 1285 (Alaska 1999)

[97] *Id.* at 1286.

[98] *Ebeid ex rel. U.S. v. Lungwitz*, 616 F.3d 993, 998 (9th Cir. 2010); *see also* Fed. R. Civ. P. 9(b).

Case No. 3:25-cv-00091-SLG, *John Madsen, et al. v. Heather D'Andrea Fish, et al.*
Order on Three Pending Motions
Page 21 of 37

Case 3:25-cv-00091-SLG    Document 68    Filed 01/14/26    Page 21 of 37

alleged."[99]

The Fishes' Counterclaims adequately identify multiple examples of false representations of fact that satisfy Rule 9(b)'s heightened particularity requirement.[100] The Counterclaims expressly identify Mr. Madsen as the person who made the misrepresentations and what those allegedly fraudulent or misleading representations were.[101] For example, Paragraph 5(b) of the Counterclaims states the when ("during the negotiation-phase of the purported transaction in mid-July 2022"), the where ("at the Lodge"), and the who ("counter-defendant Madsen").[102] Some examples of the misrepresentations include the allegedly inflated revenue expectations; that Mr. Madsen was "operating the business at a minimum with little to no help"; and the reassurances about the staffing support the Fishes would receive at the Lodge.[103] Although Paragraphs 5 and 6 contain phrases such as "or words to this effect," the paragraphs are "specific enough to give defendants notice of the particular misconduct which is alleged to constitute the fraud charged."[104]

---

[99] Docket 43 at 6.

[100] *See* Docket 27 at 12-17, ¶¶ 3-14.

[101] *See* Docket 27 at 12-17, ¶¶ 5-7.

[102] Docket 27 at 12, ¶ 5(b).

[103] Docket 27 at 12-15, ¶¶ 5-6.

[104] *Semegen v. Weidner*, 780 F.2d 727, 731 (9th Cir. 1985).

Case No. 3:25-cv-00091-SLG, *John Madsen, et al. v. Heather D'Andrea Fish, et al.*
Order on Three Pending Motions
Page 22 of 37

Case 3:25-cv-00091-SLG     Document 68     Filed 01/14/26     Page 22 of 37

### 3. Fraudulent Non-Disclosure and the Duty to Disclose

The Counterclaims also allege that Mr. Madsen "omitted certain material facts which amounted to fraud and/or misrepresentation by silence."[105] Examples of the alleged omitted facts include "lavish and unreasonable promises and assurances to already-booked hunting parties"; "all critical support staff . . . were intent on leaving the Lodge and its associated services once counter-complainants took over"; "what little help remained on-site at the time of transfer was not competent or adequate for the tasks and services necessary to sustain operations"; "[Mr. Madsen] was retaining rights to the runway in question and that he would be using the runway in competition with the Lodge and its associated services"; "[Mr. Madsen] intended to compete with the Lodge"; Mr. Madsen "had so trashed his own reputation in the area through prior dealings"; and "property taxes on the subject property were in arrears at the time of the transfer, as were payments on the Native Land Lease."[106]

Mr. Madsen argues he was under no duty to disclose and therefore cannot be liable for any alleged omissions.[107]

Under a fraudulent non-disclosure theory, an omission can constitute a false statement when there is a duty to disclose.[108] The Alaska Supreme Court has

---

[105] Docket 27 at 15, ¶ 7.

[106] Docket 27 at 15-17, ¶ 7(a)-(h).

[107] Docket 43 at 7-9.

[108] *See Hagans, Brown & Gibbs v. First Nat. Bank of Anchorage*, 810 P.2d 1015, 1019 (Alaska

Case No. 3:25-cv-00091-SLG, *John Madsen, et al. v. Heather D'Andrea Fish, et al.*
Order on Three Pending Motions
Page 23 of 37

Case 3:25-cv-00091-SLG     Document 68     Filed 01/14/26     Page 23 of 37

adopted the Restatement's rule for fraudulent non-disclosure (or misrepresentation by omission):[109]

> One who fails to disclose to another a fact that he knows may justifiably induce the other to act or refrain from acting in a business transaction is subject to the same liability [as for an affirmative misrepresentation] if, but only if, he is under a duty to the other to exercise reasonable care to disclose the matter in question.[110]

Under Section 551(2) of the Restatement, "[o]ne party to a business transaction is under a duty to exercise reasonable care to disclose to the other before the transaction is consummated" in several scenarios.[111]

In their opposition, the Fishes assert that three of those scenarios are applicable here—Sections 551(2)(b), (d), and (e).[112] The Court agrees that the duties listed in those three sections of the Restatement are adequately pled by the Fishes in Paragraph 7 of the Counterclaims, which describes different instances

---

1991).

[109] *See Arctic Tug & Barge, Inc. v. Raleigh, Schwarz & Powell*, 956 P.2d 1199, 1202 (Alaska 1998).

[110] *Turnbull v. LaRose*, 702 P.2d 1331, 1334 (Alaska 1985) (quoting Restatement (Second) of Torts § 551(2) (1977)).

[111] Restatement (Second) of Torts § 551(2).

[112] Docket 55 at 10-11 (citing Restatement (Second) of Torts § 551(2)(b) ("matters known to him that he knows to be necessary to prevent his partial or ambiguous statement of the facts from being misleading"); *id.* § 551(2)(d) ("the falsity of a representation not made with the expectation that it would be acted upon, if he subsequently learns that the other is about to act in reliance upon it in a transaction with him"); *id.* § 551(2)(e) ("facts basic to the transaction, if he knows that the other is about to enter into it under a mistake as to them, and that the other, because of the relationship between them, the customs of the trade or other objective circumstances, would reasonably expect a disclosure of those facts")).

Case No. 3:25-cv-00091-SLG, *John Madsen, et al. v. Heather D'Andrea Fish, et al.*
Order on Three Pending Motions
Page 24 of 37

Case 3:25-cv-00091-SLG     Document 68     Filed 01/14/26     Page 24 of 37

of material omissions that they allege imposed a duty of disclosure.[113]

### 4. The Economic Loss Rule

Mr. Madsen asserts that the Fishes' fraud and misrepresentation claims are barred by the economic loss rule. "The economic loss doctrine provides that certain economic losses are properly remediable only in contract."[114] In a footnote, Mr. Madsen acknowledges that applications of the economic loss rule in the present context "are sparse," but he maintains that other "courts in the Ninth Circuit routinely apply it to bar tort claims that arise from contractual duties."[115]

The Fishes oppose and identify three reasons why the Court should not apply the economic loss rule to dismiss their fraud and misrepresentation claims at the pleadings stage. First, agreeing with Mr. Madsen's acknowledgement that Alaska law on the application of the economic loss rule is sparse, they maintain the Court should not apply the doctrine to dismiss these claims under Rule 12(b)(6).[116] Second, the Fishes maintain that the broad application of the doctrine would eviscerate fraud and misrepresentation claims, and hence these claims should be excepted from the doctrine.[117] And third, they maintain that the majority

---

[113] Docket 27 at 15-17, ¶ 7(a)-(h).

[114] Docket 43 at 8 (citing *Cont'l Airlines, Inc. v. Mundo Travel Corp.*, 412 F. Supp. 2d 1059, 1069 (E.D. Cal. 2006)).

[115] Docket 43 at 8 n.2 (citing *Terpin v. AT And T Mobility LLC*, 118 F.4th 1102, 1116 (9th Cir. 2024)).

[116] Docket 55 at 13 (first citing *Haberman v. Washington Public Power Supply System*, 744 P.2d 1032, 1046 (Wash. 1987); and then citing *L.D.G., Inc. v. Robinson*, 290 P.3d 215, 222 n.63-64 (Alaska 2012)).

[117] Docket 55 at 13 (quoting R. Joseph Barton, *Drowning in a Sea of Contract: Application of the*

Case No. 3:25-cv-00091-SLG, *John Madsen, et al. v. Heather D'Andrea Fish, et al.*
Order on Three Pending Motions
Page 25 of 37

Case 3:25-cv-00091-SLG    Document 68    Filed 01/14/26    Page 25 of 37

of courts that have considered the issue have held the doctrine does not apply to fraud and misrepresentation claims.[118]

Mr. Madsen's reply does not address these arguments or reference the economic loss doctrine. For the reasons articulated by the Fishes in their opposition, the Court declines to apply the economic loss doctrine to dismiss the Fishes' fraud and misrepresentation claims at the pleadings stage.

For the foregoing reasons, Mr. Madsen's motion to dismiss Counterclaim I is DENIED.

### B. Counterclaim II (Breach of Contract)

#### 1. UCC

Mr. Madsen asserts that Counterclaim II must be dismissed because the Alaska Uniform Commercial Code ("") only "applies to transactions in goods."[119] He maintains that "[n]either a membership interest in a limited liability company nor a piece of real property fall within the definition of 'good' since the former is an intangible and the latter is real property."[120] The Fishes oppose and cite to the long

_____

*Economic Loss Rule to Fraud and Negligent Misrepresentation Claims*, 41 Wm. & Mary L. Rev. 1789, 1794 n.2 and accompanying text (2000)).

[118] Docket 55 at 13-14 (collecting cases)

[119] Docket 43 at 11; *see also* Alaska Stat. § 45.02.102 ("Unless the context otherwise requires, this chapter applies to transactions in goods; it does not apply to a transaction that, although in the form of an unconditional contract to sell or present sale, is intended to operate only as a security transaction, nor does this chapter impair or repeal any statute regulating sales to consumers, farmers, or other specified class of buyers.").

[120] Docket 43 at 10-11.

Case No. 3:25-cv-00091-SLG, *John Madsen, et al. v. Heather D'Andrea Fish, et al.*
Order on Three Pending Motions
Page 26 of 37

Case 3:25-cv-00091-SLG     Document 68     Filed 01/14/26     Page 26 of 37

list of goods included in the Agreement.[121] And the Fishes maintain that given that this was a mixed transaction, involving both the sale of goods and real property, the Court should apply the predominant purpose test, which should not be done at the motion to dismiss stage.[122] In his reply, Mr. Madsen maintains that the UCC does not apply because "[t]his is a case of a sale of a business, not real estate or 'goods.'"[123] "The counterclaims are only in reference to the business itself, a dynamic entity, not 'goods' or land[.]"[124]

Mr. Madsen too narrowly constrains the transaction at issue. The sale at issue here includes multiple types of assets such as real property (several parcels of land and the Lodge itself), various goods such as equipment, vehicles, fuel, and other gear commonly used at a hunting and fishing lodge, and intangible assets.[125] In Paragraph 2 of their Counterclaims, the Fishes explicitly refer to Dockets 1-2 through 1-6, which includes a list of multiple items of personal property.[126] Thus, the Fishes' Countercomplaint adequately references "goods" under the UCC.

Further, the Countercomplaint adequately alleges deficiencies in the goods

---

[121] Docket 55 at 15 (citing Docket 1-2 at 23-25).

[122] Docket 55 at 15 (citing *Hudson v. Town and Country Value Hardware, Inc.*, 666 S.W.2d 51, 53 (Tenn. 1984)).

[123] Docket 57 at 2.

[124] Docket 57 at 5.

[125] Docket 27 at 12-17, ¶¶ 5-7; Docket 1-2 at 2.

[126] Docket 27 at 12, ¶ 2.

Case No. 3:25-cv-00091-SLG, *John Madsen, et al. v. Heather D'Andrea Fish, et al.*
Order on Three Pending Motions
Page 27 of 37

Case 3:25-cv-00091-SLG    Document 68    Filed 01/14/26    Page 27 of 37

sold. For example, Paragraph 5(j) alleges that Mr. Madsen represented to the Fishes that when they took possession, they would "have enough fuel and propane to operate for a season."[127]

For the foregoing reasons, Mr. Madsen's motion to dismiss the UCC component of Counterclaim II at the pleadings stage of this case is DENIED.

### 2. Covenant of Good Faith and Fair Dealing

Counterclaim II also includes a claim for the breach of the covenant of good faith and fair dealing.[128] Mr. Madsen asserts that the Fishes cannot plausibly plead the claim because of the non-reliance clause in the Agreement.[129] A "covenant of good faith and fair dealing is implied in all contracts in Alaska," and it "prevents each party from doing anything that will injure the right of the other to receive the benefits of the agreement."[130] The covenant's purpose "is to effectuate the reasonable expectations of the parties, not to alter or add terms to the contract"; it "will not create a duty where one does not exist."[131] For the same reason that the Court denied Mr. Madsen's motion to dismiss Counterclaim I based on the non-reliance clause, the motion to dismiss Counterclaim II's alleged breach of the

---

[127] Docket 27 at 14, ¶ 5(j).

[128] Docket 27 at 18, ¶¶ 21-22.

[129] Docket 43 at 5.

[130] *Alaska Fur Gallery, Inc. v. Tok Hwang*, 394 P.3d 511, 516 (Alaska 2017) (citations omitted).

[131] *Id.*

Case No. 3:25-cv-00091-SLG, *John Madsen, et al. v. Heather D'Andrea Fish, et al.*
Order on Three Pending Motions
Page 28 of 37

Case 3:25-cv-00091-SLG    Document 68    Filed 01/14/26    Page 28 of 37

covenant of good faith and fair dealing is likewise denied.

Thus, Mr. Madsen's motion to dismiss Counterclaim II is DENIED.

### C. Counterclaim III (Rescission, Declaratory Relief, and Refund)

In Counterclaim III, the Fishes seek "rescission of the purported purchase-and-sale transaction in question, a declaration to that effect, a refund (return) of all sums they paid in pursuance thereof, and a rescission of the [Transaction and subsequent Amendments]."[132] Mr. Masden asserts that "the Fishes cannot state a claim for [rescission] because they could not have relied on the alleged misrepresentations made by Madsen."[133] Like Counterclaims I and II, Mr. Madsen relies on the non-reliance clause as the basis of his motion to dismiss this Counterclaim, stating that "the Fishes expressly agreed in § VI(d) of the Agreement that they had not relied on any representations made by Madsen at the time of sale, and therefore, any reliance by them would not have been justifiable."[134]

For the same reason that the Court has denied Mr. Madsen's motion to dismiss on the basis of the non-reliance clause as to Counterclaims I and II, the motion to dismiss Counterclaim III is likewise DENIED.

### D. Counterclaim IV (Alaska Unfair Trade Practices Act)

Counterclaim IV alleges several violations of Alaska's Unfair Trade Practices

---

[132] Docket 27 at 19, ¶24.

[133] Docket 43 at 4.

[134] Docket 43 at 4.

Case No. 3:25-cv-00091-SLG, *John Madsen, et al. v. Heather D'Andrea Fish, et al.*
Order on Three Pending Motions
Page 29 of 37

Case 3:25-cv-00091-SLG     Document 68     Filed 01/14/26     Page 29 of 37

and Consumer Protection Act, Alaska Stat. § 45.50.471 *et seq.* ("UTPCPA").[135] Mr. Masden asserts that the UTPCPA does not apply to the Agreement because (1) "neither the sale of Madsen's membership interest in SLH nor the sale of SLA were provided in connection with a consumer transaction because the Fishes are not 'consumers' because they were not buying 'goods or services'" within the meaning of the statute; and (2) the Fishes have not alleged "an ascertainable loss of money" from Mr. Masden's alleged violation of the UTPCPA[136]

In their opposition, the Fishes contend that the transaction (1) falls within the definition of "goods or services" under Alaska Stat. § 45.50.561(a)(9) because the Agreement included a "multiplicity of significant and tangible high-value goods"; and (2) satisfies Alaska Stat. § 45.50.571(b) because "goods or services" need not be purchased in connection with a consumer credit transaction or secured by a residence for the UTPCPA to apply.[137]

Alaska's UTPCPA prohibits "unfair methods of competition and unfair or deceptive acts or practices in the conduct of trade or commerce."[138] To state a prima facie claim under the UTPCPA, a plaintiff must plausibly allege facts to support the following two elements: "(1) that the defendant is engaged in trade or

---

[135] Docket 27 at 19-20.

[136] Docket 43 at 11-13.

[137] Docket 55 at 17.

[138] Alaska Stat. § 45.50.471.

Case No. 3:25-cv-00091-SLG, *John Madsen, et al. v. Heather D'Andrea Fish, et al.*
Order on Three Pending Motions
Page 30 of 37

Case 3:25-cv-00091-SLG    Document 68    Filed 01/14/26    Page 30 of 37

commerce; and (2) that in the conduct of trade or commerce, an unfair act or practice has occurred."[139] Alaska Stat. § 45.50.531(a) grants a private right of action to "[a] person who suffers an ascertainable loss of money or property as a result of another person's act or practice declared unlawful by the UTPCPA."[140] Because the UTPCPA "is a remedial statute, its language should be liberally construed."[141]

In *Western Star Trucks, Inc. v. Big Iron Equipment Service, Inc.*, the Alaska Supreme Court held that the UTPCPA was not limited solely to goods and services offered to the public at large, but also extended to commercial transactions.[142] Thus, the Court agrees with the Fishes that the UTPCPA applies to this transaction. And the fact that Ms. Fish is a real estate professional, and not solely a traditional "consumer," does not foreclose the Fishes' UTPCPA claim, as the "[UTPCPA] may apply in the business-to-business context."[143]

Further, although the Alaska Supreme Court has "consistently held that real

---

[139] *Merdes & Merdes, P.C. v. Leisnoi, Inc.*, 410 P.3d 398, 410 (Alaska 2017) (quoting *Kenai Chrysler Ctr., Inc. v. Denison*, 167 P.3d 1240, 1255 (Alaska 2007)). The parties do not appear to dispute the first element, that Mr. Madsen, the owner of multiple LLCs, was a "defendant engaged in trade and commerce." Alaska Stat. § 45.50.471. Thus, the Court focuses on the second element.

[140] *Id.* at 413.

[141] *Id.* at 410 (quoting *Alaska Tr., LLC v. Bachmeier*, 332 P.3d 1, 10 (Alaska 2014)).

[142] 101 P.3d 1047, 1052 (Alaska 2004).

[143] *ASRC Energy Servs. Power & Commc'ns, LLC v. Golden Valley Elec. Ass'n, Inc.*, 267 P.3d 1151, 1163 (Alaska 2011).

Case No. 3:25-cv-00091-SLG, *John Madsen, et al. v. Heather D'Andrea Fish, et al.*
Order on Three Pending Motions
Page 31 of 37

Case 3:25-cv-00091-SLG     Document 68     Filed 01/14/26     Page 31 of 37

property transactions are neither a good nor a service,"[144] this transaction was not limited to solely real property. The sale was of membership interests in the LLCs (SLH and SLA), which included both services and goods. SLA predominantly offers services such as hunting and guiding trips; SLH's assets include not only real property, but also significant personal property—i.e. goods—related to the Lodge's operations, such as fuel and propane, and sufficient equipment and vehicles to support the staff of "guides, packers, pilot, managerial oversight at the Lodge housekeeping, and grounds-keeper."[145]

The Court also finds that the Fishes have adequately pled that they suffered an "ascertainable loss" as a result of Mr. Madsen's alleged UTPCPA violations. Although the Fishes seek "an amount to be proved at trial," the fact that the precise monetary amount is not yet determined does not mean there is no ascertainable loss.[146] Moreover, in their prayer for relief, the Fishes do identify an ascertainable loss of at least $3,000,000.[147]

Thus, Counterclaim IV adequately pleads the elements of a UTPCPA claim and Mr. Madsen's motion to dismiss Counterclaim IV is DENIED.

### E. Counterclaim V (Punitive Damages)

---

[144] *Bachmeier*, 332 P.3d at 9.

[145] Docket 27 at 12-17, ¶¶ 5-7; s*ee also* Docket 1-3 at 1.

[146] Docket 27 at 20, ¶ 28.

[147] Docket 27 at 21, ¶ 4; *see also* Docket 55 at 19 ("here, an exact dollar amount -- $430,287.87 -- is already being litigated by the parties").

Case No. 3:25-cv-00091-SLG, *John Madsen, et al. v. Heather D'Andrea Fish, et al.*
Order on Three Pending Motions
Page 32 of 37

Case 3:25-cv-00091-SLG    Document 68    Filed 01/14/26    Page 32 of 37

Count V of the Counterclaim seeks punitive damages.[148] Mr. Madsen asserts that Counterclaim V must be dismissed because punitive damages are a form of relief, not an independent cause of action.[149] On this point, the Court agrees with Mr. Madsen; a request for punitive damages need not and should not be stated as a separate cause of action. Accordingly, Mr. Madsen's motion to dismiss Counterclaim V is GRANTED.[150]

### III. The Fishes' Motion for Partial Summary Judgment

The Fishes seek partial summary judgment as follows: (1) rescission of the Agreement; and (2) an order directing Mr. Madsen to refund to them the amount of $430,287.87 as restitution.[151] The Fishes assert two grounds for this relief: (1) Mr. Madsen's "fraud and misrepresentation . . . induced the Fishes to execute" the Agreement and associated Amendments; and (2) Mr. Madsen is "equitably estopped from attempting enforcement thereof."[152] Although not clearly articulated in their motion, it appears the Fishes are seeking partial summary judgment on Counterclaim III of their Counterclaim.

In his opposition to the Fishes' motion, Mr. Madsen contends that the Fishes

---

[148] Docket 27 at 20-21, ¶¶ 29-31.

[149] Docket 43 at 9-10.

[150] The Court notes that the dismissal of Counterclaim V is of no consequence, as punitive damages are included sought in both Counterclaim IV and in the prayer for relief. *See* Docket 27 at 20, ¶ 28 (Counterclaim IV); Docket 27 at 21, ¶¶ 5-6 (Prayer for Relief).

[151] Docket 33 at 1-2.

[152] Docket 33 at 1-2.

Case No. 3:25-cv-00091-SLG, *John Madsen, et al. v. Heather D'Andrea Fish, et al.*
Order on Three Pending Motions
Page 33 of 37

Case 3:25-cv-00091-SLG    Document 68    Filed 01/14/26    Page 33 of 37

are not entitled to partial summary judgment because (1) their motion is premature; and (2) there is a genuine issue of material fact regarding the Fishes' reliance on Mr. Madsen's alleged misrepresentations.[153]

## A. Timing of Summary Judgment

Rule 56(b) of the Federal Rules of Civil Procedure permits a party to move for summary judgment "at any time until 30 days after the close of all discovery."[154] However, federal courts routinely deny such motions as premature if the opposing party has not had a fair opportunity to conduct discovery.[155]

Under Rule 56(b), the Fishes may file the motion for summary judgment unless Rule 56(d) applies or a local rule provides otherwise. Here, Rule 56(d) does not apply as Mr. Madsen has not "show[n] by affidavit or declaration that, for specified reasons, [he] cannot present facts essential to justify [his] opposition"[156] and no local rule applies. Thus, the Court will consider the Fishes' motion for partial summary judgment on its merits.

## B. There is a Genuine Dispute of Material Fact as to Justifiable Reliance

The Fishes appear to seek summary judgment on their Counterclaim III

---

[153] Docket 44 at 1-2. In their motion, the Fishes rely on their unanswered requests for admissions sent to Mr. Madsen that are the subject of a pending motion to amend at Docket 64. *See supra* note 37.

[154] Fed. R. Civ. P. 56(b).

[155] *See Metabolife Int'l, Inc. v. Wornick,* 264 F.3d 832, 846 (9th Cir. 2001).

[156] Fed. R. Civ. P. 56(d).

Case No. 3:25-cv-00091-SLG, *John Madsen, et al. v. Heather D'Andrea Fish, et al.*
Order on Three Pending Motions
Page 34 of 37

Case 3:25-cv-00091-SLG     Document 68     Filed 01/14/26     Page 34 of 37

(Rescission, Declaratory Relief, and Refund) and assert summary judgment in their favor is warranted because the non-reliance clause at issue is void as a matter of fairness and public policy.[157] In his opposition, Mr. Madsen does not dispute that he made many of the misrepresentations to the Fishes.[158] But he maintains that there is a genuine issue of material fact as to whether the Fishes justifiably relied on those misrepresentations. Mr. Madsen cites to *Wasser & Winters Co. v. Ritchie Bros. Auctioneers (America), Inc.*, in which the Alaska Supreme Court held that "whether reliance is justified is ordinarily a question of fact."[159]

Even if Mr. Madsen did make all the misrepresentations the Fishes have alleged, Mr. Madsen has demonstrated a genuine issue of fact remains as to whether the Fishes justifiably relied on those alleged misrepresentations. Mr. Madsen should be permitted to pursue discovery on whether the Fishes justifiably relied on Mr. Madsen's alleged statements such as "[the Lodge] would easily realize $100,000 a month." And likely, the determination of justifiable reliance may need to be made by the trier of fact.[160] Indeed, the Fishes seem to (perhaps

---

[157] Docket 34.

[158] *See* Docket 45 at 6-11.

[159] Docket 45 at 13 (citing *Wasser & Winters Co. v. Ritchie Bros. Auctioneers (America), Inc.*,185 P.3d 73, 81 (Alaska 2008)).

[160] *See Wasser & Winters Co.*, 185 P.3d at 81 ("Wasser is correct that whether reliance is justified is ordinarily a question of fact material to a misrepresentation claim."); *see also id.* at 81 n.29 (citing *Anchorage Chrysler Ctr., Inc. v. DaimlerChrysler Corp.,* 129 P.3d 905, 914-15 (Alaska 2006) ("Although some courts appear to hold that determinations as to whether reliance was justified can be a question of law reviewed de novo, our own precedents suggest that it is a question of fact, and it seems that most jurisdictions that have addressed the issue say it is either a purely factual issue or a mixed question of law and fact, to be reviewed for clear error in either

Case 3:25-cv-00091-SLG    Document 68    Filed 01/14/26    Page 35 of 37

unintentionally) acknowledge this disputed material fact where they state in their motion: "One might argue the Fishes had no right to rely on Madsen's assurances."[161] While, as discussed above, the Court disagrees with Mr. Madsen's assertion that the non-reliance clause conclusively establishes that the Fishes are not entitled to judgment as a matter of law because they were not justified in relying on any representations made by Madsen, the Court does find that whether the Fishes were justified in relying on Mr. Madsen's misrepresentations cannot be determined on the present record.

Therefore, the Fishes' motion for partial summary judgment as to Counterclaim III is DENIED.

## C. Equitable Estoppel

The Fishes also assert they are entitled to partial summary judgment because Mr. Madsen should be equitably estopped from enforcing the parties' Agreement.[162] Under Alaska state law, "[t]he elements of equitable estoppel are 'the assertion of a position by conduct or word, reasonable reliance thereon by another party, and resulting prejudice.'"[163]

Like the rescission claim discussed in the preceding section, there is a

---

event.").

[161] Docket 34 at 16.

[162] Docket 34 at 18.

[163] *Wright v. State*, 824 P.2d 718, 721 (Alaska 1992) (citing *Jamison v. Consolidated Utilities, Inc.,* 576 P.2d 97, 102 (Alaska 1978)).

Case No. 3:25-cv-00091-SLG, *John Madsen, et al. v. Heather D'Andrea Fish, et al.*
Order on Three Pending Motions
Page 36 of 37

Case 3:25-cv-00091-SLG     Document 68     Filed 01/14/26     Page 36 of 37

genuine dispute of material fact as to the Fishes' reasonable reliance on Mr. Madsen's alleged misrepresentations. Thus, the Fishes' motion for summary judgment based on equitable estoppel is DENIED.

## CONCLUSION

Based on the foregoing, IT IS ORDERED:

1.      Plaintiffs' Motion to Amend Case Caption at **Docket 65** is **GRANTED**. Defendants William Espiricueta and Ivan Steadman are DISMISSED from this action and the case caption shall be amended to terminate William Espiricueta and Ivan Chikigak Steadman as Defendants;

2.      Plaintiff/Counter-Defendant John Madsen's Motion to Dismiss Counterclaims at **Docket 43** is **GRANTED** as to Counterclaim V only and **DENIED** as to Counterclaims I through IV; and

3.      The Fishes' Motion for Partial Summary Judgment at **Docket 33** is **DENIED**.

DATED this 14th day of January, 2026, at Anchorage, Alaska.

_/s/ Sharon L. Gleason_
UNITED STATES DISTRICT JUDGE

Case No. 3:25-cv-00091-SLG, _John Madsen, et al. v. Heather D'Andrea Fish, et al._
Order on Three Pending Motions
Page 37 of 37

Case 3:25-cv-00091-SLG      Document 68      Filed 01/14/26      Page 37 of 37